IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 12, 2025

## ANDREW LEVI JEFFERSON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Coffee County**
**No. 2019-CR-46478        William A. Lockhart, Judge**

_____

### No. M2025-00275-CCA-R3-PC
_____

Petitioner, Andrew Levi Jefferson, appeals the denial of his petition seeking post-conviction relief from his guilty-pleaded convictions in Coffee County Circuit Court case numbers 40579, 42946, 43169, and 43688. Petitioner pleaded guilty to two counts of sale of 0.5 grams or more of a Schedule II controlled substance; possession of a Schedule II controlled substance with the intent to sell or deliver; possession of 0.5 grams or more of a Schedule II controlled substance with the intent to sell or deliver; and possession of a weapon by a convicted felon, for which he is serving an effective twenty-five-year sentence. On appeal, Petitioner contends that he received ineffective assistance of trial counsel because counsel failed to (1) investigate evidence tampering by a police officer; (2) file several motions to suppress; and (3) adequately explain the plea agreement. After a thorough review of the record and applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

Grant M. Sadler (on appeal) and Zachary Smith (at post-conviction hearing), Manchester, Tennessee, for the appellant, Andrew Levi Jefferson.

Jonathan Skrmetti, Attorney General and Reporter; Kati A. Coats, Assistant Attorney General; Craig Northcott, District Attorney General; and Marcus D. Simmons, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This post-conviction appeal relates to two sets of guilty pleas Petitioner entered in Coffee County Circuit Court case numbers 43688, 40579, 42946, and 43169. Pursuant to the plea agreement, several charges in the above-referenced cases and other pending Coffee County cases were dismissed.[1]

On February 14, 2018, Petitioner entered an open guilty plea ("the open plea") in case number 43688 to possession of 0.5 grams or more of a Schedule II controlled substance with the intent to sell or deliver, simple possession of marijuana, and possession of a weapon by a convicted felon. The open plea hearing transcript was not exhibited to the post-conviction hearing or included in the appellate record.

On February 13, 2019, Petitioner entered a second set of guilty pleas with agreed sentences ("the global plea") in case numbers 40579, 41349, 42946, 43169, and 44298; at the global plea hearing, the State and Petitioner also announced an agreed sentence for case number 43688. A recording of the global plea hearing was played during the post-conviction hearing but not entered as an exhibit. The plea hearing was transcribed as part of the post-conviction hearing transcript.

At the global plea hearing, the trial court examined Petitioner under oath concerning the terms of the global plea agreement and Petitioner's understanding of his rights. Petitioner affirmed that he had signed each of the plea forms for case numbers 40579, 41349, 44298, 42946, and 43169. Petitioner stated that he had read each document before signing it. When asked whether there was anything he did not understand or would like to have explained further to him, Petitioner responded negatively. Petitioner affirmed that he understood he had the right to plead not guilty and proceed to a jury trial; to have an attorney appointed to represent him at trial; to have the State prove his guilt beyond a reasonable doubt; to cross-examine the State's witnesses; and to remain silent or testify. Petitioner stated that he understood that pleading guilty to the offenses meant that they could be used to enhance any punishment he might receive for future offenses. Petitioner affirmed that he wished to waive his rights and plead guilty.

The State gave the following factual basis for the global plea:

[In case number 40579,] on July 25, 2013, Deputy Dallas Smith of the Coffee County Sheriff's Department organized a drug task force sting in Tullahoma. It . . . took place at the Waffle House on North Jackson Street in Tullahoma.

---

[1] The dismissed charges, which were related to drug offenses, failure to appear, and driving with a revoked license, consisted of a Class B felony, four Class E felonies, four Class A misdemeanors, and three Class B misdemeanors.

Officers moved in on a vehicle they believed to be involved in the traffic of controlled substances, (Inaudible) at a vehicle, went inside the restaurant, completed a drug deal, returned to the vehicle. Inside that vehicle, it was learned that [Petitioner] was the driver. There was consent given to search the residence.[2] Inside that residence was found 9 1/2 grams of white powder, several pills of hydrocodone, cyclobenzaprine, diazepine, five (Inaudible) and two sets of digital scales. The white powder tested positive for cocaine and methamphetamine.

. . . .

[In case number 41349,] on May 3[], 2014, [Petitioner] was turning himself in to the Coffee County Jail under court order. During the booking-in process, it was discovered that he had a small white baggie in his right hand. That baggie contained 5 1/2 grams of marijuana and almost 7 grams of cocaine and four packs of Suboxone.

. . . .

[In case number 42946] on November 18[], 2015, Officer Thomas Elliott with the Tullahoma Police Department responded to . . . South Franklin Street in Tullahoma in response to a report of a fight. When he arrived at the scene, he made contact with that resident. He was allowed to enter the residence. Inside that residence . . . was [Petitioner]. There was a strong odor of marijuana that was detected inside of the apartment . . . . [C]onsent was asked of the occupant to search the residence. They refused. Search warrants were obtained, and inside of the residence was found a white plastic Walmart bag. The bag contained two large clear baggies with a green leafy substance believed to be marijuana. In the same bag were two clear baggies containing a white powder substance believed to be cocaine. It weighed approximately 38 grams. In addition, there were also several other clear baggies, a set of digital scales in the same bag, and other drug paraphernalia located throughout the house . . . . The substance tested positive for cocaine in the amount of 31.11 grams.

. . . .

[In case number 43169,] Investigator James Sherrill and Investigator Brandon Reed of the Coffee County Sheriff's Department organized a

---

[2] We note that the prosecutor may have misspoken here and that the Waffle House incident does not seem to have involved the search of a residence.

controlled buy at the residence of [Petitioner]. The buy took place on video and audio and depicted [Petitioner] in his house selling one gram of cocaine to the confidential informant. The evidence was determined by the TBI Crime Lab to be .87 grams of Schedule II, cocaine.

. . . .

[In case number 44298], on March 31[], 2017, [Petitioner], while an inmate at the Coffee County Jail, was subjected to a search of himself and his cell. Inside of his cell, there was found a bag that contains tobacco, rolling papers, and there was also located a Suboxone strip in the box of rolling papers that was found in his cell.

Petitioner agreed that the State's recitation of the facts was accurate as to each case.

The State announced the terms of the global plea agreement and the agreed sentence for case number 43688. The agreement was as follows:

| Case Number | Offense | Classification | Sentence |
|---|---|---|---|
| 40579 – Count 2 | Facilitation of the sale of less than 0.5 grams of a Schedule II controlled substance | D Felony | 8 years |
| 40579 – Count 3 | Possession of 0.5 grams or more of a Schedule II controlled substance with the intent to sell or deliver | B Felony | 12 years concurrent with Count 2 of 40579 |
| 41349 – Count 1 | Introduction of a controlled substance into a penal facility | C Felony | 6 years concurrent with 40579 |
| 42946 – Count 2 | Possession of 0.5 grams or more of a Schedule II controlled substance with intent to sell or deliver | B Felony | 12 years concurrent with 40579 |
| 43169 – Count 1 | Possession of 0.5 grams or more of a Schedule II controlled substance with the intent to sell or deliver[3] | B Felony | 12 years concurrent with 40579 |

[3] The State announced at the plea hearing that Petitioner was pleading guilty to "Possession of 0.5 grams or more of a Schedule II controlled substance with the intent to sell or deliver." However, the draft

- 4 -

| 43688 – Count 1 | Possession of 0.5 grams or more of a Schedule II controlled substance with the intent to sell or deliver | B Felony | 13 years consecutive to 40579 |
|---|---|---|---|
| 43688 – Count 2 | Simple possession of marijuana | A misdemeanor | 11 months, 29 days concurrent with Count 1 of 43688 |
| 43688 – Count 3 | Possession of a weapon by a convicted felon | C Felony | 10 years concurrent with Count 1 of 43688 |
| 44298 – Count 1 | Possession of a controlled substance in a penal facility | C Felony | 6 years concurrent with 43688 |

The State noted that the total effective sentence was 25 years and that Petitioner agreed to be sentenced as a Range II offender.

The trial court listed each offense to which Petitioner was pleading guilty and asked Petitioner if he understood that, if he proceeded to trial, the State would have to prove his guilt of the offenses beyond a reasonable doubt. Petitioner responded affirmatively. The trial court explained that, if he were convicted at trial, the Range II sentencing range for a Class B felony was 12 to 20 years; a Class C felony was 6 to 10 years; and a Class D felony was 4 to 8 years.

Petitioner denied that he had been threatened or promised anything "other than what [he] heard here in court today." The trial court asked, "Do you have any questions, anything further, [trial counsel], that you would like to add?" Trial counsel responded that the global plea agreement "disposes of all [Petitioner]'s cases in exchange for a 25-year plea, and we're going to enter his time served, which is 3 years and 5 months[.]"

On November 12, 2019, Petitioner filed a pro se petition for post-conviction relief ("the Petition") in cases 40579, 42946, 43688, and 43169.[4] In relevant part, Petitioner argued that trial counsel provided ineffective assistance by failing to make Petitioner aware

---

plea form contained in the post-conviction exhibits states that Petitioner would plead guilty to "sale of controlled substance .5 grams or more cocaine, Sch. II TCA 39-17-417." The draft judgment states that the indicted offense was "39-17-417 poss of controlled substance 5 grams or more of" and that the conviction offense was "39-17-417 sale of controlled substance, .5 grams or[.]" The signed plea forms and filed judgments have not been included in the appellate record. However, Petitioner does not allege that the judgment as filed does not accurately reflect the terms of the plea agreement.

[4] Petitioner testified at the post-conviction hearing that he was not raising any post-conviction issues related to case numbers 41349 and 44298.

of a December 2018 letter from the State ("the tampering letter") disclosing that a police officer had tampered with drug evidence in the Coffee County Sheriff's Department evidence room. Petitioner averred that he did not find out about the letter until two weeks after he entered the global plea in February 2019.

Petitioner also contended that trial counsel failed to investigate and file pretrial motions related to the following circumstances: (1) in case number 40579, the evidence in the indictment did not match the evidence detailed in the police report and turned in to the evidence room; (2) in case number 42946, a warrantless search of Petitioner's person and a house occurred; (3) in case number 43688, ten small baggies seized during a traffic stop were not tested; (4) in case number 43688, the indictment referenced a bag containing 3.36 grams of a powder, which was not what was seized from the car; (5) in case number 43688, the State did not disclose that a co-defendant gave a second statement conflicting with the co-defendant's initial statement; and (6) in case number 43169, a confidential informant had "tampered with evidence" by carrying hidden cash; the police did not establish the informant's reliability before sending her into Petitioner's home with a camera; and the police did not have probable cause to conduct the undercover drug buy.

Finally, Petitioner argued that trial counsel gave him "ill and erroneous advice" concerning his plea agreement and that he entered involuntary and unknowing pleas. Petitioner alleged that (1) he did not know Counts 2 and 3 of case number 40579 were felony offenses, and he thought he was pleading guilty to two counts of simple possession; (2) in case number 43169, he thought the agreed sentence was 6 years, not 12 years; and (3) in case number 43688, "the District Attorney didn't keep his end of the deal by fulfilling the plea bargain as promised." Petitioner also averred that he asked trial counsel to withdraw the open plea but that trial counsel did not do so.

The post-conviction court subsequently appointed counsel. At the post-conviction hearing, the post-conviction court noted that post-conviction counsel had chosen not to file an amended petition.[5]

Trial counsel testified that he was appointed to represent Petitioner in early March 2017. Trial counsel recalled receiving the tampering letter from the District Attorney's Office in December 2018 and discussing it with Petitioner "at length." Trial counsel did not remember if the letter identified any affected cases or whether any evidence existed that the officer in question worked on Petitioner's cases.

---

[5] The record does not contain a notice that no amended petition would be filed. *See* Tenn. Code Ann. § 40-30-107(b)(2) (providing that, after counsel is appointed, an amended petition or written notice that no amendment will be filed "shall be filed" within thirty days of the post-conviction court's preliminary order).

- 6 -

The December 4, 2018 tampering letter was received as an exhibit. The letter, written by District Attorney General Craig Northcott, addressed "Colleagues of the Criminal Defense Bar" and read as follows:

I am writing to give all those that handle or have handled criminal cases in Coffee County notice of a serious issue that has recently come to my attention. This obviously brings me no joy but I believe it is the only correct course of action given the difficult circumstances. Please review the following Notice to determine what, if any, action you each believe is appropriate for your individual cases.

NOTICE

Recently, upon preparing for trial against a defendant charged with drug related crimes, it was discovered that the prescription pills related to that incident had been replaced with other non-narcotic pills. It was also discovered that the evidence bag had been replaced and an attempt made to hide the fact that the original bag had been opened after coming into evidence. This tampering with the evidence occurred after the evidence had been properly logged and entered into the care, custody and control of the Coffee County Sheriff's Department's evidence custodian.

Upon investigation, it has been determined that the lead investigator and evidence custodian were not involved in the mishandling of the evidence. Instead, a superior officer with access to the evidence vault and this evidence by virtue of his former position in the Coffee County Sheriff's Department acted alone in this activity. That officer has since resigned from the Coffee County Sheriff's Department.

When this was brought to my attention by Sheriff Chad Partin, the matter was appropriately investigated by my office to confirm that the evidence had been compromised. Upon confirming such, all charges related to that evidence were dismissed. Further, I directed my office to conduct a full audit of the evidence in the custody and control of the Coffee County Sheriff's Department and no indication that any other evidence had been similarly compromised was found at that time. Additionally, at my request, a pro tem prosecutor has been assigned by the Tennessee District Attorneys General Conference to review this matter to determine what further investigation is appropriate and whether criminal charges need to be brought.

As stated above, I have no proof at this time that any other evidence has been compromised in any other past or current cases. Because there is

- 7 -

an active investigation, I am ethically limited in what I can disclose. However, because I believe it prudent to notify the defense bar of this situation at this time to the extent that I can, I am issuing this Notice so that each defense attorney can assess it for any defenses in their past, present or future cases.

Trial counsel testified that he dropped off a copy of the tampering letter at the jail for Petitioner on December 4, 2018, but did not meet with Petitioner in person. Trial counsel stated that, the same day, Petitioner called him and accused him of "colluding with the government and all sorts of nefarious things because of that letter." Trial counsel told Petitioner that he had "triggered [counsel's] ethical duty" to withdraw due to the accusations. Trial counsel filed a motion to withdraw, but the trial court denied it after a hearing.

Trial counsel testified that, after his motion to withdraw was denied, he and Petitioner conversed about "how to go forward." Trial counsel said that the State had extended a thirty-five or thirty-year plea offer at that time. Trial counsel stated that they discussed moving to withdraw his open plea, but Petitioner ultimately decided to pursue a global plea agreement and told trial counsel that he would accept a twenty-five-year offer.

Trial counsel testified that he sent Petitioner a letter on February 4, 2019, outlining the State's revised offer. Trial counsel stated that he attached to the letter copies of the draft plea forms and judgments. When asked about the difference between a single 25-year sentence and a 12-year sentence that was consecutive to a 13-year sentence, trial counsel responded that he thought the release eligibility date would be sooner for a 25-year sentence. He noted, though, that he told Petitioner many times that it was unlikely he would be granted parole "at the first instance" due to his criminal history. Trial counsel recalled that Petitioner had been previously convicted of murder and had served twenty years in prison. Trial counsel stated that he provided Petitioner with all the discovery materials he received, including copies of the indictments. Trial counsel affirmed that he reviewed the superseding indictment with Petitioner and that they "talked about everything very frequently[.]"

Trial counsel testified that case number 43688 was the only case set for trial. Trial counsel noted Petitioner had admitted that a white powdered substance and a gun found during the incident were his; counsel further noted that the case also involved simple possession of marijuana. Trial counsel testified that Petitioner asked him to file a suppression motion in that case, claiming that he had not been issued *Miranda* warnings before his police interview. Trial counsel stated that he found a recording reflecting that Petitioner was, in fact, issued *Miranda* warnings. He said that Petitioner was unhappy with the State's plea offer and thought that he "could do better by just appealing to the mercy of the [c]ourt" with an open plea. Although trial counsel could not say with certainty, he

thought that Petitioner asked to withdraw the open plea "around [the] time" they discussed the tampering letter. Trial counsel reiterated that their discussion after the trial court denied his motion to withdraw "led [them] in a different direction," which was to pursue the global plea.

Trial counsel testified that the State never offered Petitioner split confinement. He said that Petitioner agreed to be sentenced as a Range II offender and that "as his convictions mounted" he could have been classified as a career offender. Trial counsel stated that he explained to Petitioner that all the sentences would have a 35% release eligibility. When asked whether he explained "the effect of the 12-year consecutive to the 13-year," trial counsel stated:

> I can't recall specifically having that [conversation], but we had very long discussions about the effect of the plea and parole -- when would the parole hearing be? Would he get parole the first time? [A]nd all those answers are things that you kind of have to default to how TDOC calculates, when they are going to be able to have the parole hearing . . . . [T]here [were] multiple conversations.

Trial counsel thought that he calculated Petitioner's approximate parole eligibility date in one of the letters he sent Petitioner.

Trial counsel testified that he reviewed the plea forms "page by page" with Petitioner at the courthouse, that he asked Petitioner if he had any questions, and that he had Petitioner sign each page. Trial counsel noted, "That was after he had several days to have the complete file, and I believe we had a conversation in the meantime about it." Trial counsel stated that Petitioner had no questions and "seemed very happy with the plea that he was about to get."

On cross-examination, trial counsel testified that at least three attorneys had represented Petitioner before he was appointed in early March 2017. Trial counsel noted that he was initially confused as to why Petitioner had so many previous attorneys because Petitioner was "very kind and respectful," was intelligent and "asked great questions," and was "attentive and participatory."

Relative to the superseding indictment in case number 40579, trial counsel did not remember Petitioner's being confused about the charges in that case. Trial counsel stated that he and Petitioner had "[m]any conversations at length," several of which were at the jail and others of which were telephone calls or in person at court dates. Trial counsel noted that he gave Petitioner a standing day and time during which Petitioner could call him to discuss any issues Petitioner had. Trial counsel stated that he kept notes of the

conversations, although he did not document every telephone conversation on his time sheet.

Trial counsel testified that, in case number 43688, the initial prosecutor had filed a "notice of prior convictions for enhanced sentencing" and a "notice of . . . intent to seek consecutive sentences," which counsel relayed to Petitioner. Trial counsel stated that he explained the meaning of "bond-on-bond felonies" and "how they were not only going to be up ranged, but they were going to be consecutive, and that his ultimate exposure was significant."

Trial counsel testified that the initial prosecutor told him that, if Petitioner filed "whatever [pretrial] motions [he] want[ed] to file," the State would withdraw all plea offers, obtain sequential convictions, and "try to up range [Petitioner]." Trial counsel identified a July 24, 2017 letter he sent to Petitioner, which was received as an exhibit. In the letter, trial counsel stated that, as he and Petitioner had discussed "on several occasions," the State's offer was to resolve Petitioner's eleven pending cases in exchange for a 36-year Range II sentence. Trial counsel noted that Petitioner would be eligible for parole after serving about 13 years. Trial counsel wrote that the agreement did not include Petitioner's most recent charge for possessing contraband in a penal facility, which could add 6 to 12 years to his overall sentence. Trial counsel stated, "As a [R]ange [II] offender with a murder conviction, it is unlikely that you will be granted parole at your first hearing. Parole is not guaranteed at any instance." Trial counsel opined that the State's offer was "aggressive, and the government has shown little interest in negotiating in [his] case[s]."

Trial counsel wrote that, if Petitioner declined the plea offer, the State had decided to set his cases for trial, beginning with case number 43688. Trial counsel opined that the "likelihood of a better offer is low" and that Petitioner's sentencing exposure in case number 43688 alone "appears to be . . . no less than 12 years and no greater than 34." Trial counsel noted that the State had an audio recording of the co-defendant and Petitioner stating that the contraband belonged to Petitioner, as well as a forensic report confirming that Petitioner had 3.36 grams of cocaine. Trial counsel stated that the "likelihood of winning at trial is low, and the risk is substantial."

Trial counsel wrote relative to the remaining cases that they included "videotape evidence that would likely heavily influence a jury that you had possessed narcotics with an intent to distribute." Trial counsel "strongly" urged Petitioner to consider the plea agreement and stated that, if convicted on all counts, Petitioner faced "almost eight decades in prison." Trial counsel stated, though, that the choice was Petitioner's and that he would "zealously represent your interest whatever you decide." Trial counsel wrote, "By signing below, you agree that you understand the government's plea offer presented to you and the substantial risks associated with going to trial." Trial counsel identified Petitioner's signature at the bottom of the page.

Trial counsel identified a July 27, 2017 letter he wrote to Petitioner, which was received as an exhibit. The letter reflected that Petitioner had declined a revised plea offer of thirty years. Trial counsel repeated his opinion that accepting the offer would have been in Petitioner's best interest given the State's evidence, his offender classification, and the risk of a "significantly longer sentence" if he proceeded to trial. Trial counsel stated that, if Petitioner changed his mind, counsel would attempt to reinitiate plea negotiations, but he could not guarantee the offer was still open. Trial counsel noted that case number 43688 was set for trial on May 21 and 22, 2018, and that Petitioner would be arraigned in case number 44298 on August 22, 2017.

Trial counsel testified that Petitioner changed his mind about pleading guilty in case number 43688 when counsel confirmed that Petitioner had received *Miranda* warnings before his police interview.

Trial counsel identified a February 13, 2018 letter he sent to Petitioner, which was received as an exhibit. The letter reflected that Petitioner had decided to enter an open guilty plea the following day in case number 43688. Trial counsel wrote, "With your prior criminal convictions including murder, the State believes your sentencing will be as a [R]ange II offender. This means that the judge will be required to sentence you for no less than 12 years and no more than 20 years for the B felony."

Trial counsel testified that the initial prosecutor left the District Attorney's Office in June 2018 and that counsel discussed with Petitioner that he would try to "move this forward with an offer" with the new prosecutor. Trial counsel identified a June 27, 2018 letter he sent Petitioner, which was received as an exhibit. In the letter, trial counsel conveyed that, per his last conversation with the initial prosecutor and his first conversation with the new prosecutor, the State had offered a 16-year sentence in case number 43688, which was mid-range and "avoid[ed] any sort of ruling favoring the State's ability to stack [Petitioner's] felonies and have multiple consecutive sentences for these same crimes, as [the initial prosecutor had] moved to do." Trial counsel discussed that they "still ha[d] to move through the next set of cases for trial or plea . . . and the sentence for those crimes will likely be consecutive" to the sentence in case number 43688. Trial counsel agreed that Petitioner was ultimately sentenced to 13 years in that case.

Trial counsel testified that, after the trial court denied his motion to withdraw, he gave Petitioner one week to "cool down some" and then discussed with Petitioner what Petitioner wanted to do. Trial counsel said that Petitioner "outright stated that he continued to want to seek a plea bargain" and told him, "If you get me a 25-year offer, I will take it." Trial counsel noted that Petitioner "was not interested in split confinement or anything else. He took all of that off the table[.]" Trial counsel stated that the State "miraculously" agreed to the 25-year plea.

Trial counsel identified a February 4, 2019 letter he sent Petitioner, which was received as an exhibit. In the letter, trial counsel stated that the State had accepted a 25-year plea offer to dispose of all his pending Coffee County cases. Trial counsel wrote, "This is an amazing deal given the State's previous disposition to your cases." Trial counsel stated that, "[g]iven [Petitioner's] eagerness to move forward with this," he and the State had agreed to move the plea hearing date to February 13, 2019. Trial counsel stated that he would visit Petitioner on February 6 to discuss any questions he had.

Attached to the letter was a "rough summary sheet" of the plea offer stating that the "end result is a 12-year plea followed by a 13-year plea totaling 25 years. The remaining charges are either dismissed or to be served concurrent with either the 12 or 13 year sentence." Trial counsel wrote that Petitioner "should be parole eligible, as a Range II offender, at 35% of 25 years, with day for day jail credits applied from [his] initial incarceration roughly 3 years ago." The summary page stated that Petitioner would be parole eligible after having served 105 months from the date of his initial incarceration.

Trial counsel testified that he discussed the global plea with Petitioner again at the courthouse on the day of the plea hearing. He stated that Petitioner told him that he wanted to "get on with his life and start accruing his time" so that he could get out of prison before his young daughter reached adulthood.

Trial counsel testified that Petitioner wanted him to file a motion to suppress in one of the cases in which Petitioner was video-recorded selling cocaine. Petitioner's position was that he was selling heroin, not cocaine. Trial counsel did not believe that Petitioner's admitting to selling heroin, a Schedule I controlled substance, would help the case. Trial counsel stated that, in addition to the State's threat to withdraw all plea offers if he filed a motion to suppress, he did not want to "bring . . . to the forefront" that Petitioner was admitting to selling heroin. Trial counsel said that he discussed this with Petitioner "at length."

Trial counsel testified that one of Petitioner's previous attorneys had filed a motion to suppress in case number 40579. Trial counsel identified a copy of a motion and agreed that it had been denied.

Trial counsel testified that, during Petitioner's telephone call about the tampering letter, Petitioner was angry and acted as though counsel was hiding the tampering issue from him. Trial counsel read aloud from a timesheet he provided to the State. A note from December 4, 2018, read: "0.5 hours. Client calls, updates status of case. Client accused counsel of lying, misleading, refuses counsel advice on all counts." Trial counsel testified that he believed he adequately represented Petitioner to the best of his ability. He stated that he still believed the plea agreement was in Petitioner's best interest. Trial counsel

denied that he colluded with the State against Petitioner. Trial counsel stated that he had no concerns related to the knowing and voluntary nature of the pleas.

On redirect examination, trial counsel affirmed that filing a single motion related to the tampering letter would have "blown up the whole [plea] deal." Trial counsel elaborated that the initial prosecutor's approach was that the State was "tired of messing with [Petitioner]. If he is going to continue to play games, we are not even going to talk about pleas. We are just going to . . . set these up one at a time, . . . get convictions, up range, and whatever we have got to do." Trial counsel stated that, given that Petitioner wanted to pursue a plea agreement, "it was not time" to file motions to suppress. Trial counsel said that he examined the tactical advantage and timing of filing such motions.

Petitioner testified that he received a special education diploma while in custody and that he did not finish high school due to "low comprehension skills." Petitioner noted that he could read but did not know his reading level. Petitioner stated that he was not raising any post-conviction issues related to case numbers 41349 and 44298.

Petitioner testified that, in case number 43688, the police report stated that ten plastic baggies were seized as well as one bag of white powder. Petitioner averred that, because the ten baggies had not been "field tested or forensically tested, . . . this is not the same evidence that was confiscated . . . from the vehicle." Petitioner stated that he raised his concerns with trial counsel and that counsel responded, "I'm not really educated in this area. I'm going to have to get with somebody and speak to them about this." Petitioner averred that, around that time, trial counsel brought another attorney to speak to him. Petitioner stated that he discussed the issue with both attorneys and asked them to file a motion to suppress, but trial counsel never revisited it. Petitioner opined that the motion would have changed the outcome of his case. Petitioner agreed that the drug seizure occurred during the period covered by the tampering letter. Petitioner stated that he entered the open plea because he "didn't have a chance."

Petitioner testified that trial counsel received "information from a reliable source" that his co-defendant in case number 43688 gave a second statement. Trial counsel told Petitioner that he was going to move to withdraw the open plea based upon the State's having committed a *Brady* violation by failing to disclose the existence of the second statement. Petitioner said, though, that trial counsel instead moved to withdraw as counsel.

Relative to case number 40579, Petitioner testified that his previous attorney "mentioned that [Petitioner] wasn't supposed to be pulled out of the Waffle House" prior to being searched and that the previous attorney filed an unsuccessful suppression motion. Petitioner did not recall any other grounds for relief in the motion. Petitioner stated that he asked trial counsel to file an additional motion to suppress because the police alleged that he had a hydrocodone pill, 1.5 grams of a leafy substance, and 3.7 grams of cocaine;

Petitioner averred that the cocaine was not "entered into evidence." He stated that trial counsel said he would "get back with him." Petitioner testified that, later, trial counsel told him about the initial prosecutor's threat to cease plea negotiations if counsel "start[ed] piecemealing cases[.]"

Petitioner stated that, in February 2019, he received a two-page letter outlining the terms of the global plea, which included the plea summary. He denied that blank plea forms and draft judgments were attached to the letter. Petitioner averred that he only saw the plea forms in the courtroom hallway before entering his plea. Petitioner denied that he and trial counsel discussed the State's plea offers prior to the day of the global plea hearing on February 13, 2019. He stated that trial counsel told him about the individual pleas in the courtroom hallway. Petitioner agreed that, on the day of the hearing, he discussed with trial counsel that the sentence in case number 42946 would run concurrently with case number 40579.

Petitioner testified that trial counsel told him, "You are just agreeing to the offer that we got. Signing these, you are agreeing to the offer." Petitioner stated that he believed he was pleading "to a 25-year sentence at 35%" which meant that he would become eligible for parole after serving eight years. Petitioner said that he later discovered that he "would have to finish the 12 [years] in order to start on the 13 [years]" and that he would have to be granted parole twice. Petitioner also asserted that he would have to serve "75% of the 12 years" before starting the 13-year sentence. Petitioner stated that trial counsel told him prior to entering the global plea that he would be parole eligible in a number of years; he did not remember the specific number.

Relative to case number 42946, Petitioner testified that he was at a co-defendant's house when the police searched it and found a large amount of cocaine in a bedroom. Petitioner said that he was not living in the house. Petitioner stated that he told trial counsel that no search warrant had been included in the discovery materials. Petitioner told trial counsel that the indictment reflected that 38 grams of cocaine were found in the house, but the laboratory report only referenced 31 grams. Trial counsel told Petitioner that he would get back to him about the discrepancy, but he did not. Petitioner asserted his belief that a motion to suppress would have been successful. Petitioner stated that he was also concerned that the officer referred to in the tampering letter may have tampered with the evidence in case numbers 42946 and 40579.

Relative to case number 43169, Petitioner testified that, on the day of the global plea hearing, he asked trial counsel to file a motion to suppress because the police "never established the reliability . . . [or] credibility of the confidential informant." Petitioner stated that the informant took a video of the transaction with her cell phone. Petitioner said that, in the recording, the police stated that they had given the informant $80 to purchase about one gram of cocaine; however, the informant spent $120 and returned with 0.8 grams

- 14 -

of cocaine. Petitioner expressed his belief that the informant had tampered with the evidence.

Petitioner testified that, two weeks after the global plea hearing, he found out about the tampering letter from another inmate. Petitioner stated that trial counsel had not discussed the letter with him. Petitioner said that he called trial counsel, who indicated that he was aware of the letter, and Petitioner asked trial counsel why he had not brought it to his attention. Petitioner stated that he told trial counsel about his concerns regarding evidence tampering and suggested that they "go back and challenge the . . . admissibility of the evidence." He said that he also told trial counsel that he would not have pleaded guilty if he had known of the tampering letter. According to Petitioner, trial counsel responded, "You don't want to go there. Have a nice day[.]"

Petitioner recalled the trial court's asking him during the plea hearing if his plea was voluntary. Petitioner explained that, at the time of his plea, he did not believe that he could raise his concerns with the trial court. When asked for his reasoning, Petitioner said, "I don't know . . . . I didn't feel like I could express myself the way I can now."

On cross-examination, the State played the recording of the global plea hearing. Petitioner acknowledged that he was under oath when he answered the trial court's questions and that he had agreed to the sentences. Petitioner agreed with the prosecutor that he had written "well-reasoned, thought-out, comprehensive letters" to trial counsel explaining the issues Petitioner wanted to discuss with him.

Petitioner acknowledged having received in the mail trial counsel's February 4, 2019 letter, in which counsel had stated that the "end result [of the global plea] is a 12-year plea followed by a 13-year plea totaling 25 years" and that Petitioner "would be parole eligible as a Range II at 35[%] of 25 years" with about three years of jail credits applied. Petitioner maintained that he believed he was "signing for" a 25-year sentence, not "going to do 12, and then have to complete a 12 and have to do a 13-year sentence."

Relative to case number 42946, Petitioner testified that trial counsel told him that he could not raise a Fourth Amendment claim because he was not a resident of the home that was searched. Relative to Petitioner's concern about the discrepancy in the amount of cocaine tested by the crime laboratory, Petitioner agreed that 31 grams of cocaine was still more than one ounce.

Petitioner identified a November 29, 2017 letter that trial counsel sent him, which had the forensic chemistry report in case number 43688 attached. Petitioner stated that the report referenced "'powder' as in singular form" when documenting that 3.36 grams of cocaine were identified. Petitioner explained that, because the report did not state how many of the ten baggies were tested, this indicated that the laboratory did not receive "the

- 15 -

exact evidence . . . from the vehicle." Petitioner averred that, if a motion to suppress had been successful, his negotiating position relative to the other cases would have changed. Specifically, he believed the State would have agreed to concurrent sentencing of all cases.

The State introduced as a late-filed exhibit a copy of trial counsel's discovery request to the initial prosecutor, which was dated March 9, 2016.[6] The letter included a request for *Brady* material.

At the conclusion of the hearing, the post-conviction court took the case under consideration and subsequently filed an order denying relief. The post-conviction court found that trial counsel was appointed to represent Petitioner in March 2016; that counsel sent a discovery request, including a request for *Brady* material, to the State on March 9, 2016; that counsel talked with Petitioner "regularly and at length" about all aspects of the case; and that counsel set aside designated time for Petitioner to call him with questions.

The post-conviction court found that Petitioner was most interested in negotiating a plea but would periodically point out suppression issues and that counsel determined that they were meritless. The court found that the initial prosecutor had made a thirty-year offer and told trial counsel that all offers would be revoked—and the State would seek the maximum punishment on all counts of the various cases—if trial counsel began "piecemealing" the litigation. The post-conviction court found that, due to mandatory consecutive sentencing guidelines, Petitioner's sentencing exposure was "over 80 years in prison."

The post-conviction court found that, after the open plea was entered and the initial prosecutor left the District Attorney's Office, trial counsel began negotiating with the new prosecutor, which resulted in the global plea. The court found that, at the global plea hearing, the trial court "went over the plea in detail with [Petitioner] and found on the record that he knowingly and voluntar[ily] waived his rights and entered his plea."

The post-conviction court found relative to the various motions to suppress that Petitioner "put on no proof nor called any witness in order to prove that those motions would have been successful . . . . Specifically, he showed no link that any evidence in his case would have been affected by the [d]eputy who was fired for mishandling evidence." The court also examined the suppression issues raised by Petitioner at the post-conviction hearing and concluded that none of them would have been successful.

Relative to Petitioner's understanding that he was agreeing to consecutive 12- and 13-year sentences instead of a singular 25-year sentence, the post-conviction court noted trial counsel's testimony that he "hand delivered the [plea agreement] summary and

_____

[6] We note that trial counsel testified that he began representing Petitioner in March 2017.

judgment forms to the jail." The post-conviction court found that Petitioner had signed "all of the judgment forms and entered his plea."

Relative to the tampering letter, the post-conviction court found that trial counsel believed he and Petitioner discussed the letter during a call the same day the letter was sent. Trial counsel recalled that the conversation, which was noted on his time sheet, was heated and resulted in his motion to withdraw. The court concluded that Petitioner had failed to demonstrate any prejudice from trial counsel's handling of the letter, finding that Petitioner did not establish that the fired investigator handled evidence in Petitioner's cases or that chain of custody issues existed that trial counsel could have "exploited . . . other than a broad accusation."

The post-conviction court concluded that Petitioner failed to carry his burden of proving that trial counsel's performance was deficient or that he was prejudiced. The court found that counsel's decision "to weigh the risk of [Petitioner's] status of Range II, the mandatory consecutive sentencing of each offense due to the fact they were committed while on bond, as well as the evidence of guilt which included an audio and video recording of [Petitioner] conducting a drug transaction" was within the "wide range of professional assistance." The court found that trial counsel conducted necessary legal and factual investigation and communicated with Petitioner regularly in writing, over the phone, and in person.

This appeal follows.

**Analysis**

On appeal, Petitioner contends that he received ineffective assistance of counsel because trial counsel failed to (1) investigate the tampering letter; (2) adequately explain the plea agreement; and (3) file several motions to suppress. The State responds that the post-conviction court properly denied relief.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven for the court to grant post-conviction relief. *Strickland*, 466 U.S. at 687;

- 17 -

*Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997); *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see Henley*, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see Goad*, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

A substantially similar two-prong standard applies when the petitioner challenges counsel's performance in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *see Dorsey v. State*, No. W2021-01135-CCA-R3-PC, 2022 WL 2840738, at *4 (Tenn. Crim. App. July 21, 2022), *perm. app. denied* (Tenn. Dec. 14, 2022). First, the petitioner must show that his counsel's performance fell below the objective standards of reasonableness and professional norms. *See Hill*, 474 U.S. at 58. Second, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

### 1. Investigate evidence tampering

Petitioner argues that trial counsel was ineffective because he "did not investigate the extent of the tampering or whether the tainted evidence pertained to [Petitioner's] case." Petitioner avers that he has proven prejudice because he testified that, after learning of the

tampering letter, he requested that trial counsel withdraw his open plea. The State responds that the post-conviction court properly found trial counsel made a tactical decision not to pursue a tampering claim and that Petitioner failed to prove prejudice.

Trial counsel has a duty to "conduct appropriate investigations, both factual and legal, to determine what matters of defense can be developed." *Baxter*, 523 S.W.2d at 933. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691; *see also State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). However, "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Strickland*, 466 U.S. at 691.

The post-conviction court found that trial counsel and Petitioner discussed the tampering letter on December 4, 2018. The court noted trial counsel's testimony that the conversation was heated and that counsel sought to withdraw afterward. The court implicitly discredited Petitioner's testimony that he did not learn about the tampering letter until after he entered the global plea.

The post-conviction court concluded that Petitioner had failed to demonstrate prejudice from trial counsel's handling of the letter, finding Petitioner did not establish that the fired investigator handled the evidence in Petitioner's cases or that chain of custody issues existed. The court found that trial counsel conducted necessary legal and factual investigations and communicated with Petitioner regularly in writing, over the phone, and in person.

The record does not preponderate against the post-conviction court's findings. We note that, for a petitioner to prove that he was prejudiced by trial counsel's failure to investigate, he must produce the evidence trial counsel should have found—neither the post-conviction court nor this court can speculate as to the effect of hypothetical evidence on Petitioner's decision to plead guilty. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Petitioner is not entitled to relief on this basis.

### 2. Explanation of plea agreement

Petitioner asserts that trial counsel failed to adequately explain the plea agreement to him; his argument on appeal is limited to his understanding of the difference between a 25-year sentence and a 12-year sentence followed by a 13-year sentence. Petitioner avers that, if he had known that he would have to be granted parole twice, he would not have pleaded guilty. The State responds that the post-conviction court properly found that trial

counsel rendered effective assistance when explaining the plea agreement and that Petitioner knew the sentencing structure when entering his plea.

The record does not preponderate against the post-conviction court's finding that Petitioner was fully informed of the terms of the plea agreement, including the sentencing structure. Petitioner agreed at the post-conviction hearing that he had received trial counsel's February 9, 2019 letter and the two-page summary of the plea agreement. The summary page clearly states that the "end result [of the plea agreement] is a 12-year plea followed by a 13-year plea totaling 25 years. The remaining charges are either dismissed or to be served concurrent with either the 12 or 13 year sentence."

In addition, after the prosecutor announced the global plea agreement in detail and the trial court reviewed Petitioner's rights with him, Petitioner affirmed under oath that he had read and signed each of the plea forms and that he had no questions about the plea agreement. Petitioner has not overcome the "formidable barrier" of the statements he made under oath at the plea hearing. *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (holding that statements made by a petitioner, his attorney, and the prosecutor during the plea colloquy, as well as any findings made by the trial court in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings" disputing the knowing and voluntary nature of the plea). Petitioner is not entitled to relief on this basis.

### 3. Motions to suppress

In his appellate brief, Petitioner asserts that trial counsel rendered ineffective assistance based upon counsel's failure to file various motions to suppress; he then concedes, however, that the proof adduced at the post-conviction hearing is not sufficient to sustain his claims. We note that Petitioner is not obligated to raise on appeal all the issues he raised in the court below and that appellate counsel has an ethical duty not to raise meritless claims on appeal. *See* Tenn. R. Sup. Ct. 8, RPC 3.1 (providing that "[a] lawyer shall not bring . . . a proceeding, or assert . . . an issue therein, unless after reasonable inquiry the lawyer has a basis in law or fact for doing so that is not frivolous[.]"). This issue is without merit and does not entitle Petitioner to relief.

**Conclusion**

We affirm the post-conviction court's denial of the Petition.

s/ *Robert L. Holloway, Jr.*

ROBERT L. HOLLOWAY, JR., JUDGE

- 20 -